## UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BRUNO PROJECT RESCUE, INC., a 501(c)(3) corporation, ANNIE'S FAITH FOUNDATION, a 501(c)(3) corporation, CARIBBEAN CANINE CONNECTION, a 501(c)(3) corporation, ARUBA FLIGHT VOLUNTEERS D/B/A NEW LIFE FOR PAWS FOUNDATION, a 501(c)(3) corporation, POTCAKE PLACE K9 RESCUE (USA) INC., a 501(c)(3) corporation, SAVE THE SATOS, a 501(c)(3) corporation, | 24-CV-11522 |
| Plaintiffs, | **COMPLAINT PURSUANT TO THE ADMINISTRATIVE PROCEDURE ACT** |
| v. |  |
| DEPARTMENT OF HEALTH AND HUMAN SERVICES, CENTERS FOR DISEASE CONTROL AND PREVENTION, and MANDY K. COHEN, in her official capacity as Director of the Centers for Disease Control and Prevention, |  |
| Defendants. |  |

### AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

This amended complaint ("complaint") seeks declaratory and injunctive relief under the Administrative Procedure Act. Specifically, the complaint seeks an order declaring unlawful and enjoining an unprecedented dog import regulation that the Centers for Disease Control and Prevention ("CDC") announced on May 8, 2024. The CDC's new regulation, which is due to go into effect on August 1, 2024, is both a radical change to successful CDC public health regulations that have been in place since 1956 and substantially departs from the CDC's proposed regulation that was subject to notice-and-comment. As set forth in this complaint, the CDC's new regulation violates the Administrative Procedure Act and should be enjoined.

1

## I.        Introduction

1.        This complaint is brought by a group of 501(c)(3) corporations that share the common goal of saving and finding "forever homes" for puppies who were born on the streets of Caribbean islands that the United States has long recognized as being either "rabies free" or "rabies low-risk."

2.        The complaint arises from the CDC's unnecessary, procedurally defective, and arbitrary and capricious decision to impose a blanket, categorical ban on the entry into the United States of *any dog* under six months of age—including dogs who are fully vaccinated against rabies, have spent their entire lives on a Caribbean island that the United States has long deemed "rabies free," and would be entering the United States after having been adopted by an American.

3.        The CDC announced its new regulation on May 8, 2024.  The statute upon which the CDC relies upon for its new regulation—42 U.S.C. 264—requires a "determination" by the CDC that the regulation is a "necessity" to preventing the spread of a communicable disease (here, the dog variant of rabies).  *See Ala. Ass'n of Realtors v. United States HHS*, 2021 U.S. App. LEXIS 16630, at * (D.C. Cir. 2021) (holding that a "determination of necessity [is] a prerequisite to any exercise of Section 264 authority, and that necessity standard constrains the granted authority in a material and substantial way").  In its rulemaking statement, however, the CDC never cited a shred of evidence that the unprecedented breadth of its new regulation is necessary to prevent dog rabies from being reintroduced into the United States.  Insofar as it categorically prohibits healthy, rabies-vaccinated dogs who have lived their entire lives on a rabies-free Caribbean island from entering the United States until six months of age, the new regulation fails to satisfy the "necessity standard" and therefore exceeds the scope of the CDC's statutory authority.

4.      Moreover, although the CDC's position is that its new regulation was issued after a notice-and-comment period, *see* 5 U.S.C. 553, the regulation that the CDC announced on May 8, 2024 in fact is substantially different from the proposed regulation that was the subject of notice-and-comment.  Specifically, the regulation that the CDC proposed on July 10, 2023 provided that an "importer may import up to three dogs younger than six months of age in a calendar year if the dogs have not been in a [rabies] high-risk country since birth."  88 Fed. Reg. 43978, 43982 (July 10, 2023).  This exception would have enabled a United States citizen to adopt a fully vaccinated Potcake puppy from a rabies free or rabies low-risk Caribbean island and to transport or arrange for the transport of the puppy to the United States at approximately 16 weeks of age (as undersigned counsel did with Doby in April 2023).  This exception therefore would have allowed charitable organizations such as the plaintiffs to continue their missions of saving and finding "forever homes" for healthy, fully-vaccinated puppies rescued from the streets of rabies-free and rabies-low-risk Caribbean islands.  The final regulation as announced by the CDC on May 8, 2024, however, contains no such exception.  Contrary to the regulations that have been in place since 1956—and contrary to the proposed regulation that was subject to a notice-and-comment period— the CDC's new regulation would prevent a United States citizen from, for example, flying to St. Lucia (a Caribbean island that the United States has deemed rabies free) to adopt and bring back into the United States a healthy, fully vaccinated 16-week-old puppy.  This substantial difference between the CDC's proposed regulation and its final regulation could not have been foreseen by the plaintiffs, nor is the final regulation a natural outgrowth of the proposed regulation, rendering the CDC's final regulation procedurally defective.

5.      In addition to being unnecessary and procedurally defective, the CDC's new regulation represents a radical, unprecedented, unnecessary, and irrational change to the CDC's

3

dog import regulation that had been in place since 1956 and was successful in eliminating the canine variant of rabies from the United States by no later than 2007.  In short, the CDC's new regulation is arbitrary and capricious.

6.    The CDC's new regulation does not logically or rationally advance the public health interests that the CDC says it is seeking to protect, nor does it represent a coherent or rational response to the public health concerns that the CDC says it is seeking to solve.  The CDC's new regulation imposes a new, blanket requirement that any dog entering the United States from a foreign country—including a country that the United States has deemed to be rabies free—must be at least six months of age at the time of entry.  Without any evidentiary basis whatsoever, the CDC asserts that this new age requirement is necessary to ensure that the dog variant of rabies remains eradicated in the United States.  Ironically, however, the CDC's new regulation *eliminates* the 1956 regulation's requirement that all dogs entering the United States from a foreign country be vaccinated for rabies.  The CDC's new regulation instead requires only that dogs entering from rabies *high-risk* countries (most of which are in Africa and the Middle East) be vaccinated against rabies at the time of port entry; dogs arriving from either a rabies-free or rabies-low-risk country are not required to be vaccinated against rabies at the time of port entry.

7.    Absent judicial intervention, the CDC's new regulation will essentially make it impossible for the plaintiffs to continue their organizational missions.  Even worse, the CDC's new regulation will result each year in the needless suffering and deaths of hundreds if not thousands of healthy, intelligent dogs whom citizens of the United States are eager to adopt.

8.    The CDC's new regulation will, in the absence of judicial intervention, go into effect on August 1, 2024.  Unless enjoined, the new regulation will cause irreparable and serious injury to the plaintiffs.

4

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction under 28 U.S.C. 1331, 5 U.S.C. 702, and 5 U.S.C. 706.

10.     This Court has jurisdiction to grant injunctive relief pursuant to 28 U.S.C. 2201 and 28 U.S.C. 2202.

11.     This Court has venue pursuant 28 U.S.C. 1391(e)(1)(C) because plaintiff Potcake Place K9 Rescue (USA) Inc. has its principal place of business in Newton, Massachusetts.

## THE PARTIES

12.     The plaintiffs are 501(c)(3) corporations that are incorporated in various states. They share a common mission of rescuing and finding "forever homes" for dogs born on the streets of Caribbean islands.  These dogs are affectionately known as "Potcakes."

13.     Defendant CDC is a federal agency headquartered in Atlanta, Georgia.  The agency is part of the Department of Health and Human Services, which also is a defendant.

14.     Defendant Mandy K. Cohen, who is named as a defendant in her official capacity, is the current Director of the CDC.

## FACTS

### A.  The Plaintiffs' Organizational Missions: Rescuing Caribbean Island Potcakes

15.     As far back as the 1700s, commercial sailors traveling to the Caribbean islands from England, Spain, France and other European countries brought dogs on to their ships to protect supplies from rodents.  These European sailors introduced many breeds of dog to the Caribbean islands, including various breeds of hounds, terriers, spaniels, and retrievers.  Over more than two centuries, these breeds mixed together in the Caribbean islands.  These mixed breed dogs are remarkably intelligent and loving.  They are affectionately known as "Potcakes," which refers to

the congealed rice mixture at the bottom of the family cooking pot that Bahamians have traditionally fed to dogs.  For a variety of reasons, including poverty on the islands and a dearth of spay-and-neuter programs, most Potcakes living in the Caribbean islands are strays.  This includes puppies who are born on the streets.  Tragically, if left to the streets, a Potcake has an average life span of less than three years because of malnourishment, dehydration, and treatable medical conditions such as bacterial infections.

16.     The lead plaintiff in this action, The Bruno Project Rescue, Inc. ("Bruno Project"), was founded in 2016 by Doris Jolicouier, a Canadian citizen who was living at the time in St. Lucia.  Its mission is to rescue stray Potcakes, including puppies rescued weeks or even days after birth, and place them with adoptive families in the United States and Canada.  A family that adopts a Potcake is colloquially known as the Potcake's "forever home."

17.     Bruno Project is named after a stray Potcake who Doris and her husband Don rescued from the streets of St. Lucia.  When Doris and Don first met Bruno, he was malnourished and dehydrated.  Doris and Don took Bruno to a local veterinarian for treatment, who gave Bruno only a 50% chance of survival.  Doris and Don nursed Bruno back to health and permanently adopted him.  For nearly a decade, Bruno has been a cherished member of Doris's and Don's family.



18.     After adopting Bruno, Doris and Don were inspired to help other dogs like Bruno—loving, loyal, and intelligent dogs living hungry and dehydrated on the streets of St. Lucia and its neighboring islands.  Doris and Don founded their organization—Bruno Project—in Bruno's name and honor.  Eventually, Bruno Project became a registered 501(c)(3) corporation.

19.     Each year, Bruno Project places scores of Potcake puppies with "forever homes" in the United States.  Dedicated Bruno Project volunteers living in St. Lucia lovingly foster the puppies until they are approximately 16 weeks old.  Once a puppy reaches approximately 16 weeks old, the puppy will enter the United States with an adoptive family that Bruno Project has carefully screened and approved to adopt the puppy.  Bruno Project screens a prospective adoptive family well in advance of the puppy reaching 16 weeks.

20.     Before relinquishing a puppy to its new family, Bruno Project ensures that the puppy is fully vaccinated and has received a clean bill of health from a licensed and experienced veterinarian.

21.     Bruno Project does not "sell" the Potcake puppies that it rescues.  Adoptive families are asked merely to consider making a donation to Bruno Project in an amount equal to the cost that Bruno Project incurred to have the puppy vaccinated and screened by a local veterinarian (typically $400).

22.     Bruno Project's ability to relinquish puppies to their new adoptive families by around 16 weeks of age is critical for several reasons.  First, a puppy is substantially more likely to find a "forever home" if it is available to be adopted by 16 weeks.  Second, once a Potcake puppy reaches about 20 weeks of age, the puppy is at significant risk of being too large to fly in the passenger fuselage of a commercial airplane.  In nearly all instances, a Potcake that has reached 6 months of age will be too large to fly in the passenger fuselage and will need to fly in the cargo hold.  If a puppy cannot be transported in the passenger fuselage, it is more dangerous, difficult, and expensive for an adoptive family to transport the puppy to the United States—which reduces the likelihood of adoption at all.  Third, fostering puppies strains Bruno Project's scarce resources, including available space at the foster homes of Bruno Project volunteers who live on St. Lucia. The ability to place puppies with their "forever families" by 16 weeks of age is critical to Bruno Project's ability to function.

23.     The ability of an adoptive family to transport a new puppy in the passenger fuselage is also critical for another reason.  With the exception of jumbo jets (*e.g.*, Boeing 787s) that do not routinely fly in or out of Caribbean islands, a commercial passenger airplane's cargo hold has limited climate control that is not equipped to keep a dog comfortable when outside temperatures exceed 86 degrees.  For this reason, commercial airlines departing the Caribbean islands, including St. Lucia, will not allow a dog to be transported in the cargo hold between the months of April and

November.  Accordingly, it is essentially impossible for Bruno Project to get a puppy older than 24 weeks of age off of St. Lucia by airplane between the months of April and November.

24.     Since its founding, Bruno Project has placed nearly 2,000 Potcakes with their "forever homes."  Most of these Potcakes have been rescued from the streets of St. Lucia, a rabies free country.  Were it not for the efforts of Bruno Project and its dedicated volunteers, these Potcakes would die premature and lonely deaths on the streets.  Thanks to Bruno Project, these incredible canine companions live full and happy lives with adoring families that cherish them.



25.     Indeed, undersigned counsel Aaron Katz adopted Doby while on vacation in St. Lucia in April 2023.  Doby and his siblings were rescued by Bruno Project a few days after they were born under a bush near a beach in St. Lucia.  Doby (pictured below) was 18 weeks of age at the time that undersigned counsel adopted him and brought him to the United States.  Doby is now a beloved member of the Katz family and is the best friend of the Katz's other dog, Mabel (an Australian Labradoodle).



26.     The other plaintiffs in this action were formed for similar charitable purposes and collectively have achieved organizational successes similar to Bruno Project.  Collectively, they have saved and placed with American "forever families" thousands of Potcakes rescued from the streets of Caribbean islands that are rabies free or rabies low-risk.

**B. The CDC's 1956 Regulation Regarding Importation of Dogs**

27.     In 1956, the CDC implemented a regulation requiring that any dog entering the United States from a foreign country—other than from a foreign country that the CDC had deemed "rabies-free"—have a "valid rabies vaccination certificate" at the time of entry.  42 CFR 71.51(c). "Valid rabies vaccination certificate" was defined as a "certificate which was issued for a dog not less than 3 months of age at the time of vaccination and which . . . [s]pecifie[d] a date of rabies vaccination at least 30 days before the date of arrival of the dog at a U.S. port."  42 C.F.R. 71.51(a). This meant that, to enter the United States, a Potcake entering the country from St. Lucia or any other Caribbean island had to be 16 weeks of age (*i.e.*, about 3.5 months of age).

28.     The CDC also created a separate list of "high-risk countries for dog rabies." https://www.cdc.gov/importation/bringing-an-animal-into-the-united-states/high-risk.html.     The CDC's 1956 regulation permitted the CDC to deny entry to dogs seeking to enter the United States

from a high-risk country.  *See* 42 C.F.R. 71.51(e).  The only Caribbean island on that list is Haiti.
*Id.*  Most of the high-risk countries are in Africa or the Middle East.

29.    The purpose of the CDC's 1956 regulation was to help accomplish the CDC's goal
of eliminating the canine strain of rabies in the United States.  The 1956 regulation's definition of
"valid rabies vaccination certificate" was tied to the USDA-approved rabies vaccine labels.
Supported by controlled clinical studies, those USDA-approved labels state that the rabies vaccine
is effective at immunizing "healthy dogs . . . 12 weeks of age or older against rabies."
https://merckusa.cvpservice.com/ product/basic/view/1047167.  It is medically accepted that, for
a puppy vaccinated at 12 weeks of age, the antibody formation peaks at 28 days after vaccination,
meaning that the puppy is considered fully vaccinated against rabies by 28 days after vaccination.
*See* https://www.cdc.gov/mmwr/preview/mmwrhtml/rr5603a1.htm ("Within 28 days after initial
vaccination, a peak rabies virus antibody titer is reached, and the animal can be considered
immunized.").  The CDC's 1956 regulation thus effectively set 16 weeks as the minimum age of
entry for a dog born in a foreign country.

30.    The CDC's 1956 regulation worked.  By no later than 2007, the CDC deemed the
"dog-to-dog transmission of rabies . . . eliminated" in the United States.
https://www.cdc.gov/mmwr/preview/mmwrhtml/mm5635a5.htm.  The CDC stated that "[w]hile
dogs may still become infected from raccoons, skunks or bats, they will not catch dog-specific
rabies from another dog." https://www.reuters.com/article/idUSN07411620/.  The CDC stated that
"the strain [of rabies] most specific to dogs has not been seen anywhere in the United States since
2004."  *Id.*  The CDC stated that "[t]he elimination of canine rabies in the United States represents
one of the major public health success stories in the last 50 years."  *Id.*

31.     The United States was not the only country to have achieved the elimination of the canine strain of rabies.  Many others achieved the fete as well.  Among the Caribbean islands that are the focus of the plaintiffs' charitable efforts, St. Lucia, Puerto Rico, Martinique, St. Barts, St. Martin, Cayman Islands, Antigua, Barbados, Aruba, Jamaica, St. Kitts, St. Vincent and the Grenadines, and Turks and Caicos are recognized by the United States as free of the canine variant of rabies.  *Id.*

## B.   The CDC's Unnecessary, Procedurally Defective, and Arbitrary and Capricious Change to the 1956 Regulation

32.     In 2022, the CDC put into place a "temporary suspension" prohibiting the entry into the United States of any dog from any country designated as "rabies high-risk."  The impetus of that temporary suspension was the entry into the United States of four dogs—three from Egypt and one from Azerbaijan (both of which are rabies high-risk countries)—that were positive for the canine variant of rabies at the time of entry.  *See* 88 Fed. Reg. 5348, 5351 (Jan. 27, 2023). Moreover, all four dogs entered the United States with falsified vaccination paperwork.  *Id.*  The CDC's temporary suspension did not make any other changes to the CDC's 1956 regulation, nor was there any evidence that the CDC's temporary suspension of dog imports from rabies high-risk countries was somehow inadequate to fill whatever gap the CDC perceived in the 1956 regulation.

33.     Despite the resounding success of the CDC's 1956 regulation, the CDC announced on May 8, 2024 a radical change to the 1956 regulation.  Under the new regulation, no dog can enter the United States from *any foreign country*—including countries that the CDC has declared rabies free—until the dog has reached at least six months of age.  There are *no exceptions* to this unprecedented prohibition.

34.     The CDC's radical regulatory change will have a massive impact on the plaintiffs' organizational mission of rescuing Caribbean island Potcakes and placing them with American

adoptive families.  This is for several reasons: First, a Potcake that is six months old is unlikely to be small enough to qualify to fly in a commercial airline's passenger fuselage.  Thus, to make it to a "forever home" in the United States, the dog will have to fly in the airplane's cargo hold.  The CDC has recognized that airplane cargo holds represent a physical danger to dogs, and the plaintiffs know from experience that it will be more difficult to find families willing to adopt a dog who will be relegated to the airplane's cargo hold on the dog's freedom flight to the United States.  Second, commercial airlines do not allow dogs to fly from Caribbean islands to the United States in cargo hold between April and November.  This is because, during those months, the cargo hold can reach unsafe temperatures prior to takeoff, exacerbating the physical danger that cargo hold travel already poses to a dog.  Thus, the CDC's regulation essentially will make it impossible for the plaintiffs to place dogs with "forever homes" between the months of April and November.  Indeed, some Caribbean islands, such as The Bahamas, do not allow dogs to travel in an airplane's cargo hold regardless of the time of year.  Third, the plaintiffs know from experience that it is more difficult to place a dog in a "forever home" after the dog has reached six months of age.  This is because families prefer to adopt dogs when they are still smaller puppies.  Fourth, all of the above factors will conspire to strain the plaintiffs' scarce organizational resources, as they will have to foster more dogs for a longer period of time on the islands.

35.     Accordingly, by essentially extending by 2.5 months the age that a dog must have attained to be admitted to entry into the United States (from approximately 3.5 months to six months), the CDC will dramatically impair the plaintiffs' abilities to fulfill their common organizational mission of rescuing Potcakes from the streets and placing them in loving "forever homes" in the United States.  Ultimately, the worst victims of the CDC's radical regulatory change are the Potcakes themselves.

36.     In its final rulemaking statement, the CDC failed to identify any evidence that would rationally support a "determination of necessity" for the new regulation's sweeping, categorical ban on rabies-vaccinated Caribbean island Potcakes under six months of age from entering the United States from a rabies-free Caribbean island.  The new regulation therefore exceeds the CDC's statutory authority *per se*.

37.     The CDC's proposed regulation also was substantially different, and substantially more restrictive, than the final regulation that the CDC announced on May 8, 2024.  The proposed regulation included an important exception to the CDC's proposed six-months-of-age requirement—an "importer" was allowed to import into the United States up to three dogs less than six months of age per calendar year, so long as the dog was coming from a rabies free or rabies low-risk country.  This exception was a lifeline for the plaintiffs' charitable organizations, because it meant that an American family would remain able to adopt a Potcake from a rabies free or rabies low-risk Caribbean island and then fly back to the United States with the puppy as early as week 16 of the puppy's life (or to arrange for the puppy's transport to the United States after formally consummating the adoption prior to the puppy's departure from the island).  The CDC's final regulation completely eliminates that lifeline.  This dramatic change is a quintessential violation of the Administrative Procedure Act's notice-and-comment procedural requirements, because the plaintiffs could not reasonably have foreseen that the final regulation would depart so radically from the proposed regulation.  *See, e.g.*, *CSX Transp., Inc. v. Surface Transp. Bd.*, 584 F.3d 1076, 1078-1079 (D.C. Cir. 2009) ("[A] final rule fails the logical outgrowth test and thus violates the APA's notice requirement where interested parties would have had to divine [the agency's] unspoken thoughts,' because the final rule was surprisingly distant from the proposed rule." (internal quotation marks omitted)).

38.     The CDC's final regulation is also arbitrary and capricious, because the CDC's
asserted justifications for its radical change to the 1956 regulation are illogical, incoherent, and
irrational.  *See, e.g.*, *FCC v. National Citizens Committee for Broadcasting*, 436 U.S. 775, 802
(1978) (holding that a regulation "may be invalidated by a reviewing court under the 'arbitrary and
capricious' standard if [it is] not rational and based on consideration of the relevant factors");
*Bowman Transp., Inc. v. Ark-Best Freight Systems, Inc.*, 419 U.S. 281, 285 (1974) (holding that
"arbitrary and capricious" review requires the "agency [to] articulate a rational connection between
the fact found and the choice made" (internal quotation marks omitted)).

39.     First, the CDC stated that the regulatory change was made "to prevent the
reintroduction and spread of dog-maintained rabies virus variant (DMRVV) into the United
States." 89 Fed. Reg. 41726, 41726 (May 8, 2024).  Second, the CDC stated that the regulatory
change "seeks to prevent and deter the importation of dogs with falsified or fraudulent rabies
vaccine documentation." *Id.*  Neither of these explanations justify the CDC's new "uniform
standard" that requires *any dog* entering the United States from *any country* to be at least six
months of age prior to entry.  As the USDA has found and the CDC has acknowledged, a puppy
can be effectively vaccinated for rabies by 16 weeks of age.  And requiring a dog to be six months
of age at the time of entry, rather than 16 weeks of age with a valid rabies vaccine certificate, has
no logical connection to preventing or deterring the use of false or fraudulent vaccine
documentation paperwork.

40.     Ironically, while requiring that *any dog* entering the United States from *any foreign
country* be at least six months of age prior to entry, the CDC's new regulation *eliminates* the rabies
vaccination requirement for dogs arriving from countries that the CDC has deemed rabies free or
rabies low-risk.  *Id.* at 41731 (table E1).  In explaining this change, the CDC stated that it has

15

"confidence in DMRRV-free and low-risk countries which demonstrate adequate surveillance capacity and vaccination control measures in accordance with CDC published metrics . . . ." *Id.* at 41739. The CDC's elimination of *any* vaccination requirement for dogs entering the United States from countries that are low-risk but not rabies-free demonstrates the absurdity of the CDC's radical change to the 1956 regulation. If the CDC's goal is to prevent the importation of a dog infected with the canine strain of rabies, it makes no sense for the CDC suddenly to (1) require a dog to be six months of age (an age threshold that has no rational relationship to the efficacy of USDA-approved rabies vaccines) at the time of entry, and yet (2) eliminate the requirement that the dog actually be vaccinated against rabies at the time of entry. Instead, the 1956 regulation— which included a blanket requirement that a dog entering the United States from a foreign country be at least 30 days removed from a rabies vaccine given after the dog had attained at least 12 weeks of age—fulfilled that laudable agency goal.

41.     In the "Alternatives Considered" section of the CDC's May 8, 2024 rulemaking statement, the CDC recognized and sought to justify the new regulation's change to the minimum age that a dog must have attained to enter the United States. The CDC's explanations further demonstrate the arbitrary and capricious nature of the agency's radical change to the 1956 regulation. The CDC stated that the "6-month versus 4-month age requirement will also make it easier to estimate the age of dogs based on examination of their teeth, enabling CDC to better identify falsified and fraudulent documentation." *Id.* at 41746-41747. This is absurd, because the CDC's new rule does not require *any rabies vaccination documentation at all* for dogs entering from a rabies-free or low-risk country, which includes every Caribbean island other than Haiti. Moreover, to the extent the CDC is concerned with falsified or fraudulent paperwork *regarding vaccination status*, increasing the minimum age that the dog must have attained to enter the United

States does not logically solve that concern in any way whatsoever—not even a little bit.  Instead, a rational response to concerns regarding falsified or fraudulent vaccination paperwork is to strengthen the paperwork requirements, such as requiring the vaccination paperwork to be endorsed by a government official and requiring the dog to be microchipped so that the paperwork can be definitively linked to the dog who is seeking to enter the United States.  Indeed, these are two new requirements that the CDC's May 8, 2024 rulemaking actually puts into place.  *See id.* at 41747-41750.

42.     The CDC also stated that it "is difficult to age dogs under six months, and CDC has documented cases of fraud involving the movement of dogs under six months of age from DMRVV high-risk countries to DMRVV-free and DMRVV low-risk countries to avoid rabies vaccination requirements."  *Id.* at 41752.  The CDC's statement simply proves the arbitrary and capricious nature of its radical change to the 1956 regulation.  If the CDC is concerned that dogs from rabies high-risk countries might make a fraudulent pit stop in a rabies free or rabies low-risk country prior to entering the United States, in order to "avoid rabies vaccination requirements," the rational response is to require all dogs entering the United States from a foreign country to show proof of rabies vaccination—just as the 1956 regulation required.  By contrast, it is *irrational* to eliminate a rabies vaccine requirement for dogs entering from rabies free or rabies low-risk countries, as the CDC's final regulation does.  In short, the CDC's final regulation does nothing to solve the fraud issue with which the CDC professes concern.  Moreover, the CDC's final rulemaking statement does not cite a single instance of a dog from a rabies high-risk country being fraudulently pit stopped in a rabies free or rabies low-risk Caribbean island before coming to the United States.  This means that the CDC's supposed rationale for its new across-the-board six-months-of-age requirement is not supported by any evidence.  Indeed, given the stringent

restrictions that the rabies free or rabies low-risk Caribbean islands impose on the importation of dogs arriving from other countries, the chances that a dog from a rabies high-risk country might be pit stopped in one of the rabies free or rabies low-risk Caribbean islands is effectively nil.

43.    The CDC also stated that the new "age requirement will also improve alignment with USDA import requirements (7 C.F.R. 2148) for dogs imported for resale." *Id.*  This rationale cannot save the CDC's new regulation.  The CDC's statutory authority to enact animal importation rules comes from 42 U.S.C. 264, which enables the CDC to implement "[r]egulations to control communicable diseases."   Congress did not grant the CDC the statutory authority to issue regulations that, though not necessary to control the spread of communicable diseases, "align" the CDC's regulations with the USDA's regulations.  This is particularly true where the CDC new regulation sweeps more broadly than the USDA's regulation, insofar as the CDC's regulation is not limited to the importation of dogs "for resale."

44.    The CDC also stated that "transporting dogs under six months of age under conditions with unstable and fluctuating air temperatures, such as those present in the cargo area of a plane, may subject these young animals to adverse events (illness or death) because young animals cannot regulate their body temperature as efficiently as adult animals." *Id.* at 41752.  This too proves the absurdity, and the arbitrary and capricious nature, of the CDC's regulatory change. The CDC's regulatory change will now make it *overwhelmingly more likely* that rescued Potcakes will need to fly in the plane's cargo hold, as opposed to in the passenger fuselage, because Potcakes that are six months or older will more often than not be too big to qualify for travel in the passenger fuselage.  There is no basis for the CDC to say that a six-month-old dog (which still qualifies as a puppy) suddenly can travel safely and comfortably in an airplane's cargo hold.  In addition, although the plaintiffs appreciate the CDC's concern about the safety of animals traveling in a

plane's cargo hold, the CDC's statutory authority does not include enacting regulations designed to ensure animal travel safety. The CDC's statutory authority is limited to regulations designed to prevent the spread of communicable diseases.

45. The arbitrary and capricious nature of the CDC's regulatory change is also demonstrated by the CDC's own admission in its rulemaking statement that "CDC has not observed any DMRVV infections . . . among dogs imported from DMRVV-free or low-risk countries." *Id.* at 41753. This is an admission that the CDC's dramatic change to the 1956 regulation, with respect to dogs entering the United States from the rabies free and rabies low-risk Caribbean islands that are the focus of the plaintiffs' organizational efforts, was completely unnecessary. In other words, the CDC's decision to raise the minimum entry age to 6-months (a more than 50% increase to the minimum entry age dictated by the 1956 regulation) even for vaccinated dogs entering the United States from a rabies-free or low-risk country is not rational in light of CDC's acknowledgment that it has not observed any rabies infections in any dog imported from a rabies-free or low-risk country.

46. In responding to comments received from the public during the notice-and-comment period, the CDC repeatedly resorted to its absurd explanations for the new six-month "minimum age" requirement. *Id.* at 41766. The CDC stated that "[s]etting the minimum age for importation below six months would undermine the ability of authorities to ensure that dogs are fully, effectively, and verifiably vaccinated." *Id.* This explanation is completely illogical, given that the CDC *eliminated* a rabies vaccination requirement for dogs entering the United States from a rabies-free or low-risk country.

47. The CDC also suggested that "[s]creening for rabies can be difficult in puppies because they can often exhibit dyskinetic or uncoordinated movement as part of their normal

growth and development.  These awkward movements can also be seen in rabid dogs and may be mistaken in young puppies for normal movement patterns." *Id.*  The CDC has no basis whatsoever to assert that a puppy that is 16 weeks of age is somehow more "dyskinetic or uncoordinated" than a puppy that is six months of age.

### C.  Injury-in-Fact to the Plaintiffs' Organizations

48.     Although the ultimate victims of the CDC's unnecessary, procedurally defective, and arbitrary and capricious regulatory change are the Caribbean island Potcakes that are the focus of the plaintiffs' organizational efforts, the plaintiffs themselves will suffer Article III injury-in-fact from the CDC's agency action.

49.     The CDC's agency action will substantially impair the plaintiffs' organizational missions because (1) once a Potcake attains six months of age, it will more often than not be too large to travel in an airplane's passenger fuselage; (2) requiring a Potcake to travel in the airplane's cargo hold will place the Potcake at an unnecessary risk of harm, which is contrary to plaintiffs' ethos, and will cause plaintiffs or adoptive families to incur additional financial burdens due to the additional costs associated with placing a dog in cargo hold; (3) Potcakes will not be allowed to travel in the cargo hold of an airplane between the months of April and November, effectively creating an eight-month blackout period where the plaintiffs will not be able to fulfill an essential part of their organizational missions at all; (4) the plaintiffs will incur additional costs caring for rescued Potcakes, because they will need to foster the dogs longer under the CDC's new regulation; and (5) the plaintiffs will have more difficult obtaining charitable donations because their ability to succeed in their organizational mission will have been dramatically undermined by the CDC's new regulation.

50.     The CDC's new regulation will, in the absence of judicial intervention, go into effect on August 1, 2024.  The injury-in-fact is therefore certain to occur.

**CAUSE OF ACTION**

**DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

**5 U.S.C. 701 *et seq***

51.     The plaintiffs hereby realleges and incorporates all of the allegations above.

52.     Each plaintiff is a "person . . . aggrieved by agency action"—namely the CDC's May 8, 2024 announcement of a regulation, due to go into effect on August 1, 2024, that alters the dog import regulatory framework that had been in place since 1956—within the meaning of 5 U.S.C. 702.

53.     The CDC's May 8, 2024 final rulemaking constitutes a "final agency action" for purposes of 5 U.S.C. 704.

54.     The CDC's May 8, 2024 final regulation exceeds the CDC's statutory authority because it fails to satisfy the "necessity" requirement that the D.C. Circuit recognized in *Alabama Association of Realtors v. U.S. HHS*, 2021 U.S. App. LEXIS 16630 (D.C. Cir. 2021).  *See* 5 U.S.C. 706(2)(C).

55.     The CDC's final regulation issued on May 8, 2024 is such a significant departure from the proposed regulation that the CDC issued in July 2023 that the CDC failed to abide by the Administrative Procedure Act's procedural notice requirement.  *See* 5 U.S.C. 706(2)(D); 5 U.S.C. 553(b)-(c) (setting forth notice-and-comment requirements for proposed rulemaking).

56.     The CDC's agency action is arbitrary, capricious, and an abuse of discretion for purposes of 5 U.S.C. 706(2)(A).  To the extent the CDC sought to justify its agency action on grounds that do not logically arise out of the authority that Congress statutorily delegated to the

21

CDC, the CDC's agency action is also in excess of its statutory jurisdiction and authority for purposes of 5 U.S.C. 706(2)(C).

**PRAYER FOR RELIEF**

WHEREFORE, the plaintiffs pray for the following relief:

- An order temporarily enjoining the enforcement of the CDC's new regulation;

- An order declaring the CDC's new regulation unlawful under the Administrative Procedure Act;

- An order permanently enjoining the CDC's new regulation; and

- An order remanding the matter back to the CDC for further rulemaking.

Respectfully submitted,


*/s/ Aaron M. Katz*
Aaron M. Katz
Keira G. Zirngibl
AARON KATZ LAW LLC
(617) 915-6305
akatz@aaronkatzlaw.com

Attorneys for Plaintiffs

Dated: June 19, 2024