**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

|  |  |
|---|---|
| **BRUNO PROJECT RESCUE INC.,** *et al.*, | )<br>)<br>)<br>) |
| **Plaintiffs** | )<br>) |
| **v.** | )<br>)<br>) |
| | **Case No. 24-cv-11552-DJC** |
| **DEPARTMENT OF HEALTH AND HUMAN SERVICES,** *et al.*, | )<br>)<br>) |
| | ) |
| **Defendants.** | )<br>)<br>)<br>) |

_____

<u>**MEMORANDUM AND ORDER**</u>

**CASPER, J.**                                    **June 18, 2025**

## I.    Introduction

Plaintiffs Bruno Project Rescue, Inc. ("Bruno Project"), Annie's Faith Foundation ("Annie's"), Caribbean Canine Connection ("Caribbean"), Aruba Flight Volunteers ("Aruba"), Potcake Place K9 Rescue (USA) Inc. ("Potcake Place") and Save the Satos have filed this lawsuit against Defendants Department of Health and Human Services ("DHS"), Centers for Disease Control & Prevention ("CDC") and the Director of the CDC in her official capacity (collectively, "Defendants") seeking declaratory judgment and injunctive relief to resolve a purported violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  D. 1, 7.  Plaintiffs and Defendants have both moved for summary judgment.  D. 34; D. 37.  For the reasons stated below, the Court

DENIES Plaintiffs' motion for summary judgment and ALLOWS Defendants' motion for summary judgment.

## II.    Standard of Review

Summary judgment is ordinarily appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In cases involving review of agency action under the APA, however, the traditional Rule 56 standard does not apply due to the limited role of a court in reviewing the administrative record. See Int'l Junior Coll. of Bus. & Tech., Inc. v. Duncan, 802 F.3d 99, 106 (1st Cir. 2015) (observing that "[t]he summary judgment 'rubric' also 'has a special twist in the administrative law context'" (quoting Associated Fisheries of Me., Inc. v. Daley, 127 F.3d 104, 109 (1st Cir. 1997))). Rather, when administrative action is challenged under the APA "[s]ummary judgment . . . serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." Coe v. McHugh, 968 F. Supp. 2d 237, 240 (D.D.C. 2013).

The APA provides that a reviewing court should "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)-(C). "[A] court is not to substitute its judgment for that of the agency." DHS v. Regents of the Univ. of Cal., 591 U.S. 1, 16 (2020) (quoting FCC v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009)). Instead, it should "assess only whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Id. (internal citation and quotation marks omitted).

III.    **Factual Background**

The following facts are undisputed unless otherwise noted. Plaintiffs are dog rescue organizations, focused on saving dogs, commonly referred to as "Potcakes," from the Caribbean islands. D. 35 ¶¶ 1-3. Over the past decade, Plaintiffs have placed tens of thousands of rescued Potcakes into adoptive homes, the vast majority of which are located within the United States. Id. ¶ 8. Plaintiffs generally fly Potcakes to the United States on commercial airlines. Id. ¶ 9. Plaintiffs prefer to transport Potcakes as passenger fuselage rather than as cargo. Id. ¶ 10. According to Plaintiffs, travel as fuselage is cheaper, safer and less stressful for the dog than travel as cargo. Id. In addition, Plaintiffs assert that most commercial jets that travel from the Caribbean islands to the United States do not permit dogs to travel as cargo from April to October. Id. Although they make an exception for service dogs, commercial airlines do not allow dogs weighing more than twenty pounds to travel as passenger fuselage. Id. ¶ 11. Most Potcakes exceed twenty pounds by the time they are six months old. Id. ¶ 12.

The CDC designates foreign countries as rabies-free, rabies low-risk or rabies high-risk based upon their susceptibility to the dog variant of rabies ("dog rabies"). Id. ¶¶ 13-14. The CDC currently designates 110 countries as rabies high-risk, four countries as rabies low-risk and 126 countries as rabies-free. Id. ¶ 17. The CDC currently designates the Caribbean islands (other than Haiti and the Dominican Republic) as rabies-free. Id. ¶¶ 18, 19. The United States Department of Agriculture ("USDA") has approved multiple rabies vaccines for dogs. Id. ¶¶ 20-29. The CDC considers a dog to be effectively vaccinated against rabies twenty-eight days after the administration of a USDA-approved rabies vaccine. Id. ¶ 32.

In 1956, the Department of Health and Human Services ("HHS") enacted regulations to prevent dogs infected with rabies from entering the United States from foreign countries (the "1956

Regulations"). Id. ¶ 33. Under the 1956 regulations, a dog entering the United States from a foreign country needed to appear healthy upon arrival at the port of entry, 42 C.F.R. § 71.51(b)(1) (1956), and either have a "valid rabies vaccination certificate"[1] or be exempt from the vaccination certificate requirement.[2] Id. § 71.51(c)(1); D. 35 ¶ 34. In addition, under the 1956 Regulations, a dog would be denied entry if "during shipment" it "was exposed to a sick or dead animal suspected of having a communicable disease." Id. § 71.51(b)(3)(ii); D. 35 ¶ 35. The 1956 Regulations also permitted the CDC to deny entry to dogs imported from rabies high-risk countries. Id. §§ 71.51, 71.63; D. 35 ¶ 36. The 1956 Regulations did not, however, impose any age requirement for admission of dogs to the United States. D. 35 ¶ 40. Plaintiffs assert that they planned their organizations and funding efforts in reliance upon the 1956 Regulations, and in particular, upon the absence of a minimum age requirement for dogs entering the United States. Id. ¶ 41.

In September 2007, the CDC's rabies expert announced that dog rabies had not been seen in the United States since 2004 and the United States was declared rabies-free. Id. ¶¶ 42-44; D. 30-1 at 2. Since 2007, approximately one million dogs enter the United States from foreign countries annually, and the CDC estimates that approximately 10% of these dogs come from rabies high-risk countries. Id. ¶¶ 45, 47. There have been six known documented instances since 2007 in which a rabies-infected dog has been imported to the United States from a foreign country. Id.

---

[1] A "valid rabies vaccination certificate" is "a certificate which was issued for a dog not less than 3 months of age at the time of vaccination and which: (1) [i]dentifies a dog on the basis of breed, sex, age, color, markings, and other identifying information[;] (2) [s]pecifies a date of rabies vaccination at least 30 days before the date of arrival of the dog at a U.S. port[;] (3) [s]pecifies a date of expiration which is after the date of arrival of the dog at a U.S. port . . .[;] (4) [b]ears the signature of a licensed veterinarian." Id. § 71.51(a).

[2] The 1956 Regulations exempted a dog from the vaccination certification requirement if "the owner submit[ted] evidence satisfactory to the Director that: (i) [i]f a dog is less than 6 months of age, it has been only in a country determined by the Director to be rabies-free . . . or[;] (ii) [i]f a dog is 6 months of age or older, for the 6 months before arrival, it has been only in a country determined by the Director to be rabies-free." Id. § 71.51(c).

¶ 48.  Each such dog came from a rabies high-risk country, although one was transported to the United States from Egypt (a rabies high-risk country) through Canada (a rabies-free country).  Id. Four of the six infected dogs were older than six months.  Id.

In May 2019, the CDC announced a temporary suspension of imports of dogs from Egypt. Id. ¶ 55.  In June 2021, the CDC extended this temporary suspension to dogs from all rabies high-risk countries.  Id. ¶ 56; D. 30-1 at 1-10.  The CDC said this change was due to a noticeable increase in the number of dogs arriving with fraudulent rabies vaccination documentation, the limited number of public health resources available to respond to them and the concern that dog rabies could be reintroduced to the United States.[3]  D. 30-1 at 1-10.  By the time this temporary suspension went into effect, four rabid dogs had been imported into the United States.  Id. at 2, 130-31.  All four were imported by animal rescue groups for the purpose of adoption and three out of the four cases involved fraud.  Id.  The CDC extended this suspension multiple times, before allowing it to expire on July 31, 2024.  D. 35 ¶¶ 57, 71-72; Control of Communicable Diseases; Foreign Quarantine:  Importation of Dogs and Cats, 89 Fed. Reg. 41726, 41738 (Mar. 13, 2024).

As part of this temporary suspension, the CDC began using serologic titer test results (i.e., blood tests) to check whether dogs entering the United States have dog rabies antibodies.  D. 30-1 at 59.  Dogs entering the United States from rabies high-risk countries must now have vaccination and serology titer test paperwork, which "must also be endorsed by a government official in the exporting country."  See Control of Communicable Diseases; Foreign Quarantine:  Importation of

---

[3] The CDC continues to consider dog rabies "a serious threat that that requires effective controls to prevent its re-introduction into the United States . . . .  The consequences of failure to control [dog rabies] remain extraordinary and significant."  D. 30-1 at 129.  As the CDC has noted, in 1988 when dog rabies "found in Mexico began spreading in U.S. coyote populations, it spread to wildlife and dogs in Texas where [dog rabies] had been previously eliminated.  Two people died and the subsequent re-elimination of [dog rabies] cost $56 million (in 2023 USD) and required over 10 years of effort."  Id.

Dogs and Cats, 89 Fed. Reg. at 41728.  The CDC implemented this system to reduce the use of fraudulent documentation, reduce the number of dogs denied admission to the United States, reduce the number of sick dogs upon arrival and reduce the need for resources to respond to issues relating to inadequately vaccinated dogs upon arrival.  Id.

In July 2023, the CDC announced a proposed rule for the purpose of "prevent[ing] the reintroduction and spread of [dog rabies] in the United States" and "prevent[ing] and deter[ing] the importation of dogs with falsified or fraudulent rabies vaccine documentation."[4]  Control of Communicable Diseases; Foreign Quarantine:  Importation of Dogs and Cats, 88 Fed. Reg. 43978, 43978 (July 10, 2023).  The rulemaking proposed a requirement that all dogs must be at least six months old to enter the United States, regardless of whether they enter from a rabies-free country. D. 35 ¶ 61.  The rulemaking, nevertheless, continued the CDC's longstanding practice of allowing dogs entering the United States from a rabies-free country to do so without proof of rabies vaccination, so long as there was adequate documentation that the dog had not been in a rabies high-risk country in the preceding six months.  Id. ¶ 69; Control of Communicable Diseases; Foreign Quarantine:  Importation of Dogs and Cats, 89 Fed. Reg. at 41743.

The CDC cited multiple reasons for this new, proposed rule.  First, inspecting dogs under six months of age for rabies can be difficult because young dogs often exhibit dyskinetic or uncoordinated movement (a characteristic of rabies) as part of their normal development.  D. 30-1 at 141.  These movements subside by the time a dog is six months old, making it easier for an inspector to identify a rabid dog.  Id.  Second, the six-month age requirement makes it easier to determine a dog's age based upon its teeth, id. at 121-22, 40; D. 30-5 at 205, which in turn helps

---

[4] Between January 2020 and July 2021, the CDC documented more than 1,000 instances of incomplete, inadequate or fraudulent rabies vaccination certificates for dogs arriving from rabies high-risk countries.  D. 30-1 at 58.

the CDC confirm that the dog matches the documentation presented and is old enough to have been adequately vaccinated for rabies.  D. 30-1 at 121-22, 141.  Third, the CDC noted that for dogs requiring a serologic titer test, "the six-month age requirement ensures that the time between titer collection and travel is sufficient for monitoring the dog to ensure it does not develop signs of rabies."  Id. at 121.[5]  Fourth, the six-month age requirement aligns with current United States Department of Agriculture ("USDA") regulations under the Animal Welfare Act that require dogs imported for resale to be at least six months old.  See 9 C.F.R. §§ 2.150-53; D. 30-1 at 141.  According to the CDC, the requirement thus removed an incentive to misrepresent the reason why puppies are being imported or to misrepresent the health history of dogs.  D. 30-1 at 141.

Some scientific communities, including the World Organization for Animal Health ("WOAH") recommended waiting until a dog is seven months old before importing it into the United States.  Id. at 140.  The CDC reported that it settled on a six-month age requirement to "provide additional flexibility and less burden to importers without compromising public health goals."  Id.

On May 13, 2024, the CDC announced its final rulemaking, which adopted the six-month age requirement for all dogs entering the United States (the "Rule"), codified as 42 C.F.R. § 71.51.  D. 35 ¶ 63; Control of Communicable Diseases; Foreign Quarantine:  Importation of Dogs and Cats, 89 Fed. Reg. at 41726.  Under the Rule, all dogs entering the United States, even those from rabies-free countries, are inspected.  D. 30-1 at 114-15.  The Agency acknowledged that it had "not observed any [rabies] infections . . . among dogs imported from [rabies]-free or low-risk

---

[5] The CDC also noted that the six-month age requirement aligns with current USDA regulations under the Animal Welfare Act that require dogs imported for resale to be at least six months old, see 9 C.F.R. §§ 2.151(a)(1)(iii), and thus removes any incentive to misrepresent the reason why puppies are being imported, D. 30-1 at 141.

Case 1:24-cv-11552-DJC    Document 41    Filed 06/18/25    Page 8 of 15

countries." Control of Communicable Diseases; Foreign Quarantine: Importation of Dogs and Cats, 89 Fed. Reg. at 41805.

In its notice of proposed rulemaking, the CDC had considered an exception to the six-month age requirement for individuals seeking to import up to three personal pet dogs per year through a land border crossing into the United States from Mexico or Canada, so long as those dogs had not been in a rabies high-risk country in the previous six months. D. 30-1 at 51. The CDC ultimately decided not to adopt this exception after noting numerous instances during the proposal period in which importers transferred dogs from high-risk countries to Mexico or Canada and then fraudulently represented at the United States border that the dogs had not been in a high-risk country for the previous six months. Id. at 141. According to the CDC, an exception allowing dogs younger than six months to enter the United States via land border crossings would only "create[] a loophole for unscrupulous importers to exploit." Id.

Plaintiffs assert that the Rule has had a "devastating impact" upon their organizations, by (1) "requiring longer and costlier foster periods"; (2) narrowing the window in which they can transport dogs to the United States; (3) reducing adoption opportunities because "many prospective adopters are interested only in adopting puppies that do not meet the CDC's new age requirement"; (4) reducing their donor funds and (5) reducing the number of dogs Plaintiffs have the resources to rescue. D. 35 ¶ 75. In December 2024, the CDC announced that it would revisit the Rule, propose revisions and re-open the rulemaking process, Id. ¶ 77; see Off. of Info. and Regul. Affs., https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202410&RIN=0920-AA87 (last visited June 16, 2025), but, at the recent motion hearing, the parties indicated that there had been no further developments in this regard. In the interim, the CDC continues to enforce the Rule. D. 35 ¶ 78.

**IV.    Procedural History**

Plaintiffs instituted this action on June 13, 2024, D. 1, and shortly thereafter, filed an amended complaint, D. 7.  On July 10, 2024, Plaintiffs moved to stay the effective date of the Rule. D. 12.  The Court denied the motion, concluding that Plaintiffs had not demonstrated "a likelihood of success on the merits in their challenge to the new CDC regulation or that any irreparable harm that they might suffer with [the Rule] in effect outweighs the public interest implicated by the change in regulations (i.e., namely, preventing a communicable disease, rabies, from being (re)introduced to the United States)."  D. 20.  On November 12, 2024, the government produced the administrative record.  D. 30.  Plaintiffs and Defendants now have filed cross motions for summary judgment.  D. 34; D. 37.

**V.    Discussion**

> **A.    The Rule is Promulgated Pursuant to the CDC's Statutory Authority under § 264(a)**

Defendants assert that the CDC has the statutory authority to promulgate the Rule pursuant to 42 U.S.C. § 264(a), D. 38 at 10-13, which provides:

> The [CDC], with the approval of the Secretary [of HHS], is authorized to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession.  For purposes of carrying out and enforcing such regulations, the Surgeon General may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary.

"[T]he second sentence [of the statute] informs the grant of authority by illustrating the kinds of measures that could be necessary:  inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of contaminated animals and articles."  Ala. Ass'n of Realtors v. HHS, 594 U.S. 758, 763 (2021).  All of "[t]hese measures directly relate to preventing the interstate

spread of disease by identifying, isolating, and destroying the disease itself." Id.; see Tiger Lily, LLC v. United States Dep't of Hous. & Urb. Dev., 992 F.3d 518, 522-23 (6th Cir. 2021) (concluding that § 264(a) permits the enactment of measures akin to "'inspection, fumigation, disinfection, sanitation, pest extermination' and so on").

Defendants assert that "[t]he revised regulation falls squarely within the CDC's regulatory authority because it is an inspection requirement that is directly related to 'identifying, isolating, and destroying [rabies] itself.'" D. 38 at 11 (quoting Ala. Ass'n, 594 U.S. at 763). Plaintiffs insist that the Rule is instead an age-based import ban, because dogs less than six months old are inspected only for age, rather than for rabies, "or even for a rabies proxy."[6] D. 36 at 6, 12-16.

To qualify as an inspection requirement pursuant to 42 U.S.C. § 264(a), a regulation must "directly relate to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself." Ala. Ass'n, 594 U.S. at 763. Here, the Rule requires that all dogs entering the United States be inspected for rabies, 42 C.F.R. § 71.51(i), and includes the six-month age requirement codified in 42 C.F.R. § 71.51(f) to facilitate such inspection. As the CDC has explained, limiting imports to dogs older than six months makes it easier to (1) identify a rabid dog; (2) determine that the animal matches its documentation and (3) ensure its tests for rabies

---

[6] Import bans are authorized pursuant to 42 U.S.C. § 265, which requires the CDC first make a determination:

> that by reason of the existence of any communicable disease in a foreign country there is a serious danger of the introduction of such disease into the United States, and that this danger is so increased by the introduction of persons or property from such country that a suspension of the right to introduce such persons and property is required in the interests of the public health.

Because, as discussed more fully below, the Court concludes the Rule was promulgated pursuant to the CDC's statutory authority under 42 U.S.C. § 264(a), the Court does not consider whether the rule was authorized pursuant to 42 U.S.C. § 265(a). See D. 36 at 6, 15; D. 38 at 13 n.13; D. 39 at 3-4.

immunity are accurate. D. 30-1 at 50, 121-22, 141. In short, as another court has already determined, the six-month age requirement is directly related to preventing the spread of rabies. U.S. Sportsmen's All. Found. v. Centers for Disease Control, No. 24-cv-818, 2025 WL 1068069, at *6 (W.D. Mich. Feb. 11, 2025) (analyzing 42 U.S.C. § 71.51(a), and noting that it "facilitates reliable inspections through the six-month age requirement"), report and recommendation adopted, No. 24-cv-818, 2025 WL 1162418 (W.D. Mich. Apr. 22, 2025). This means that even if the Rule cannot be characterized as an inspection requirement, it is, at a minimum, authorized under 42 U.S.C. § 264(a)'s catchall provision for "other measures, as in [the CDC's] judgment may be necessary." Id.; cf. Ala. Ass'n, 594 U.S. at 763-64 (concluding that the CDC exceeded its statutory authority pursuant to 42 U.S.C. § 264(a) by enacting an eviction moratorium in response to the COVID-19 pandemic).

That the six-month age requirement is in line with other regulations promulgated pursuant to § 264(a) further underscores this conclusion. See 21 C.F.R. §1240.62 (banning the commercial sale of all small turtles); Louisiana v. Mathews, 427 F. Supp. 174, 175-76 (E.D. La. 1977) (rejecting an argument that the small turtle ban exceeds the FDA's statutory authority pursuant to 42 U.S.C. § 264(a)); Indep. Turtle Farmers of La., Inc. v. United States, 703 F. Supp. 2d 604, 619 (W.D. La. 2010) (concluding that 42 U.S.C. § 264(a) could fairly be read to authorize a ban on the sale of baby turtles under appropriate factual circumstances). The Rule is also in step with a prior version of 42 C.F.R. § 71.51, which imposed an age requirement upon dogs imported from rabies high-risk countries. 42 C.F.R. § 71.51(a), (c) (1985 version).

### B.    The Rule is Not Arbitrary and Capricious

Plaintiffs suggest that even if the Rule is authorized by statute, it is arbitrary and capricious and based upon unreasoned decision-making. D. 36 at 16-21. "The scope of review under the

11

'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  "One basic procedural requirement of administrative rulemaking is that an agency must give adequate reasons for its decisions."  Encino Motorcars, LLC v. Navarro, 579 U.S. 211, 212 (2016).  "[A]n agency rule would be arbitrary and capricious if the agency . . . entirely failed to consider an important aspect of the problem [or] offered an explanation for its decision that runs counter to the evidence before [it]."  Motor Vehicle Mfrs. Ass'n of U.S, 463 U.S. at 43.

Plaintiffs urge that the dog rule is arbitrary and capricious – at least as applied to the Caribbean islands – because "there is absolutely nothing in the administrative [record] that rationally justified the new requirement as a necessary rabies-prevention measure."  D. 36 at 16; see Atl. Fish Spotters Ass'n v. Daley, 8 F. Supp. 2d 113, 117 (D. Mass. 1998) (concluding that a regulation banning the use of small spotter planes to harvest tuna was arbitrary and capricious because there was no evidence connecting the use of spotter planes to the rule's justifications and there was data directly refuting same).  In making this argument, Plaintiffs liken this case to Sustainable Fisheries Coal. v. Raimondo, 589 F. Supp. 3d 162, 170 (D. Mass. 2022), in which another session of this Court concluded that a Department of Commerce regulation banning the use of midwater trawl gear in certain inshore waters was arbitrary and capricious.  D. 36 at 18-19. In reaching this conclusion, the court there noted that although the agency asserted that its finding was supported by an "overlap analysis," the evidence in the administrative record did not show that overlap was "a reliable proxy for localized depletion" and in fact, the government had not produced any scientific evidence that there was "localized depletion," let alone any evidence connecting the use of trawl gear to such depletion.  Raimondo, 589 F. Supp. 3d at 170.

Plaintiffs assert that this case is analogous because a dog's age is "not a reliable proxy for whether the dog presents a risk of re-introducing rabies into the United States," particularly because "dogs entering the United States from a rabies-free country are not required to be vaccinated against rabies at the time of entry." D. 36 at 18-19; see D. 39 at 5. But the record here, unlike that in Raimondo, 589 F. Supp. 3d at 170, contains evidence linking a dog's age to the threat it poses with respect to rabies. For example, dogs older than six months are easier to inspect for rabies. D. 30-1 at 141. Plaintiffs also ignore the other evidence in the administrative record supporting the Rule. For example, the CDC noted that the age requirement protects the "welfare of the dog during international travel" while it is subjected to stresses like "long travel times, temperature fluctuations, oxygen or altitude changes, and food/water deprivation." Control of Communicable Diseases; Foreign Quarantine: Importation of Dogs and Cats, 89 Fed. Reg. at 41789.

Plaintiffs insist that "the lack of any documented instances of a rabies- infected dog coming to the United States from a rabies-free or a rabies low-risk country is conclusive that the CDC's new regulation is irrationally overbroad." D. 36 at 19 (emphasis omitted); see D. 39 at 4-7. But the CDC has observed that "[t]he importation of just one dog infected with [rabies] risks re-introduction of the virus into the United States." D. 30-1 at 2. "The importation in 2019 of a single dog with rabies cost more than $400,000 USD for the public health investigations and rabies-port exposure prophylaxis (PEP) of exposed persons." D. 30-1 at 2. And this "does not account for the worst-case outcomes, which include (1) transmission of rabies to a person who dies from the disease or (2) ongoing transmission to other domestic and wildlife specifies in the United States." Id. at 7. In light of this risk, the underlying evidence of vaccination fraud and the incentive that would exist to divert dogs from high-risk countries through low-risk or rabies-free countries if

those countries were subject to different age restrictions for dog imports, the CDC's decision to move forward without such specific documentary evidence is not arbitrary and capricious. See Stilwell v. Off. of Thrift Supervision, 569 F.3d 514, 519 (D.C. Cir. 2009) (explaining that "agencies can, of course, adopt prophylactic rules to prevent potential problems before they arise" and "[a]n agency need not suffer the flood before building the levee").

Further, as Plaintiffs conceded at oral argument, an overinclusive regulation is not necessarily arbitrary and capricious. As the Supreme Court has observed, a prophylactic rule may prove "under-inclusive or over-inclusive," in particular cases, but may nonetheless constitute an acceptable "response to legitimate interests." Weinberger v. Salfi, 422 U.S. 749, 776 (1975). In Klamath Forest All. v. U.S. Forest Serv., 746 F. Supp. 3d 761, 769 (N.D. Cal. 2024) the United States District Court for the Northern District of California concluded that the Forest Service's decision to err in favor of being overinclusive with respect to hazard tree abatement was not arbitrary and capricious given "the potential for injury or death to forest visitors" and the impossibility of accurately predicting "whether and when a particular tree will strike a road, trial or facility." Id. (alterations omitted). Here too, the CDC is justified in erring toward over-inclusivity given the substantial risk posed by the introduction of just one rabid dog into the country and the incentive that would exist to divert dogs younger than six-months from rabies high-risk countries through rabies low-risk and rabies free countries in the absence of the Rule.

According to Plaintiffs, the "irrationality" of the CDC's new age requirement is underscored by the CDC's contemporaneous decision to relax the import restrictions it had applied to dogs from high-risk countries. D. 36 at 7. But the relaxation of such restrictions is consistent with the CDC's development of its serologic testing procedures. D. 30-1 at 50, 122. Now that the CDC has a reliable method to confirm the vaccination status of dogs imported from rabies high-

risk countries, its decision that a full import ban from those countries was no longer necessary is not irrational.

Plaintiffs assert that "[i]n its rulemaking statement the CDC did not display any awareness, let alone sensitivity, that the new age requirement poses an existential threat to the organizational missions of dog rescue organizations . . . that focus their efforts on rabies-free countries." D. 36 at 17. But the CDC did exactly this by adopting a six-month age requirement rather than the seven-month requirement recommended by WOAH, in an effort to strike a balance with the needs of importers. D. 30-1 at 140. For all these reasons, the Court concludes that the CDC did "provide a reasoned explanation for the change" and declines to find the Rule arbitrary and capricious. Encino Motorcars, LLC, 579 U.S. at 221; see Sportsmen's All. Found, 2025 WL 1162418, at *4-5 (concluding same).

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion for summary judgment, D. 37, and DENIES Plaintiffs' motion for summary judgment, D. 34.

**So Ordered.**

/s Denise J. Casper
United States District Judge